IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ONEBEACON AMERICA INSURANCE )
  COMPANY, )
                                             )
    Plaintiff, )
                                             )
      vs. )    Civil Action No. 10-737
                                             )
UBICS, INC., )
                                             )
    Defendant. )

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff's motion to dismiss in part the counterclaims raised by Defendant UBICS, Inc. ("UBICS.") For the reasons discussed below, Plaintiff's motion is denied without prejudice.

**I.   BACKGROUND**

    A.   Factual Background[1]

Plaintiff OneBeacon America Insurance Company ("OneBeacon") issued an insurance policy to UBICS on September 1, 2009, under which OneBeacon agreed to provide multiple forms of business insurance ("the Policy.") The Policy was effective from September 1, 2009, through September 1, 2010, and was a

---

[1] The facts in this section are taken from the Complaint and from Defendant's Answer, Affirmative Defenses and Counterclaims thereto (Doc. No. 9.)

continuation of prior policies which had provided essentially the same types of coverage.

From 2005 through approximately February 16, 2010, John Tain was employed by UBICS as its Controller. On February 25, 2010, UBICS informed OneBeacon that Mr. Tain had admitted to having embezzled more than $913,000 from the company over a period of some five years. A subsequent forensic accounting investigation confirmed this course of embezzlement beginning in early 2005.

UBICS sought coverage for the loss under the Policy, which included a provision for employee theft crime coverage of up to $1 million with a $5,000 deductible. OneBeacon refused to pay, based in part on an exclusion pertaining to losses caused by "anyone authorized to sign checks for UBICS." (Complaint, ¶ 23.) Although the parties disagree on why this endorsement had been added to the Policy, they do agree that it had been added with the version of the policy beginning in 2008 after OneBeacon had covered previous losses due to theft. The endorsement was clearly worded and was conspicuously placed in a schedule attached to the Policy. Because Mr. Tain, as Controller, was explicitly authorized to sign checks for UBICS, Plaintiff contended it was not obligated to cover the losses he admitted to causing. Moreover, according to OneBeacon, Mr. Tain's position as an officer of the corporation meant that his

knowledge of the embezzlement at the time he represented UBICS in procuring the employee loss coverage was imputed to the company and the Policy was void due to fraud, misrepresentation or concealment.

B.  Procedural History

OneBeacon filed suit in this Court on May 27, 2010, seeking, *inter alia*, a declaratory judgment pursuant to 28 U.S.C. § 2201 that it was not obligated to cover the losses caused by Mr. Tain. UBICS filed its Answer, Affirmative Defenses and Counterclaim on August 12, 2010, in which it alleged that OneBeacon had breached its contractual duties under the Policy and had engaged in a pattern and practice of bad faith by refusing to honor its obligations. (Doc. No. 9, "Counterclaim.") In particular, UBICS contended that because Mr. Tain's defalcations had begun prior to the date on which the endorsement excluding coverage for certain employees became effective, OneBeacon was obligated to cover the losses. Count I of the UBICS Counterclaim seeks a declaratory judgment that OneBeacon has a duty to provide coverage for the employee theft under the Policy which became effective in September 2009; Count II alleges breach of the insurance contract; Count III contends that OneBeacon breached the covenant of good faith and fair dealing implied in all contracts formed under Pennsylvania law; and Count IV alleges breach of the Pennsylvania Bad Faith

3

Statute, 42 Pa.C.S.A. § 8371.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), on September 29, 2010, OneBeacon moved to dismiss Count III of the Counterclaim in its entirety and parts of the prayer for relief associated with Count IV. (Plaintiff's Motion to Dismiss, Doc. No. 17, "Mot. Dis.") The parties having briefed the issues raised by OneBeacon, the matter is now ripe for decision.

## II. JURISDICTION AND VENUE

The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based on complete diversity of the parties[2] and an amount in controversy exceeding the statutory minimum. Venue is properly laid in the Western District of Pennsylvania inasmuch as a substantial portion of the events giving rise to the parties' claims occurred within this district. 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires that a pleading which "states a claim for relief must contain. . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule further provides that "[e]ach allegation must be simple, concise, and direct" but

---

[2] OneBeacon is a Massachusetts corporation with its principal place of business in Canton, Massachusetts; UBICS is a Delaware corporation with its principal place of business in Canonsburg, Pennsylvania. (Complaint, ¶¶ 2-3.)

4

"[n]o technical form is required." Fed. R. Civ. P. 8(d). "The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 320, n.18 (3d Cir. 2010) ("Brokerage Antitrust"), citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 565, n.10 (2007).

In the aftermath of Twombly, Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009), and the interpretation of those two cases by the United States Court of the Appeals for the Third Circuit, the pleading standards which allow a complaint to withstand a motion to dismiss pursuant to Rule 12(b)(6) have taken on slightly new parameters. The standard is now whether the complaint includes "sufficient factual matter to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); see also Twombly, 550 U.S. at 555, holding that a complaint which offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." The Fowler court further directed that in considering a motion to dismiss, the district court should undertake a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but

5

may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief."

Fowler, 578 F.3d at 210-211 (quotations and citations omitted.)

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949; see also Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009), and Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). "Determining whether a complaint states a plausible claim for relief will. . .be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Brokerage Antitrust, 618 F.3d at 361, quoting Iqbal, 129 S. Ct. at 1950. A complaint should not be dismissed even if it seems unlikely the plaintiff can prove the facts alleged in the complaint or will ultimately prevail on the merits. The Twombly pleading standard "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery

6

will reveal evidence of the necessary element." <u>McTernan v. City of York</u>, 564 F.3d 636, 646 (3d Cir. 2009) (internal quotations omitted.)

**IV. DISCUSSION**

    A.    <u>Counterclaim Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing by OneBeacon</u>

OneBeacon seeks dismissal of Count III of the Counterclaim which alleges that it breached the implied covenant of good faith and fair dealing in its interactions with UBICS. Plaintiff argues that Pennsylvania law does not recognize such a cause of action for common law bad faith sounding in tort. Moreover, even if this Court were to construe Count III as sounding in contract, such a bad faith claim merges with a breach of contract claim if one is separately pleaded, as is the case here. (Mot. Dis., ¶¶ 3-9.)

UBICS contends, however, that OneBeacon's first argument is irrelevant because it has not pled a tort claim. (Response to Motion to Dismiss, Doc. No. 20, "UBICS Resp.," at 6.) In opposing the motion to dismiss, UBICS raises three arguments: First, the cases on which OneBeacon relies for its position that the bad faith claim must necessarily merge with the breach of contract claim in Count II were decided at a different point in the litigation, that is, at summary judgment or after trial. At this early stage, UBICS should be permitted to pursue both

claims in the alternative. (UBICS Resp. at 7-9.) Second, because there is a fundamental disagreement between the parties as to which portion of the Policy (or previous policies) applies and because OneBeacon has sought in Count II of the Complaint to rescind certain portions of the coverage, UBICS is entitled to plead in the alternative an implied bad faith claim along with the breach of contract claim until such time as a number of legal theories have been clarified. (Id. at 9-10.) Third, the allegations supporting the claim for breach of contract and those supporting the claim for breach of good faith arise from different acts by OneBeacon. Specifically, the breach of contract claim is based on the fact that UBICS paid its premiums and performed all other conditions precedent to coverage, but OneBeacon refused to cover the losses caused by Mr. Tain, even after accepting the premiums. On the other hand, the breach of the implied covenant of good faith and fair dealing is based on OneBeacon's improper reasons (or excuses) for refusing to cover the loss, i.e., relying on the wrong policy, inapplicable endorsements, and "false facts." Count III is intended to preserve an implied or quasi-contractual breach of duty claim even if OneBeacon succeeds in convincing the finder of fact that it is entitled to rescind all or part of the Policy. (UBICS Resp. at 10-12.)

We agree that at this early stage of the litigation where

there is uncertainty about even such fundamental matters as whether Mr. Tain was an "officer" of the corporation whose knowledge about the embezzlement can be imputed to UBICS or whether the Policy was a "claims-made" policy or an "occurrence-based" policy, UBICS should be allowed to proceed under alternative theories of liability. *See* <u>Taylor v. Pathmark Stores, Inc.</u>, 177 F.3d 180, 189 (3d Cir. 1999) (a party "may plead in the alternative, and our caselaw finds no difficulty with pairing the two claims in one complaint"). Under the federal rules,

> [a] party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.

Fed. R. Civ. P. 8(d)(2).

Early in the litigation, e.g., at the point of a motion to dismiss, courts will generally allow the plaintiff to proceed under conflicting theories until such time as the details of the actions between the parties have been clarified. *See, e.g.,* <u>Berger & Montague, P.C. v. Scott & Scott, LLC</u>, 153 F. Supp.2d 750, 753-754 (E.D. Pa. 2007), allowing the plaintiff to proceed on its breach of contract and conversion claims even though the "gist of the action" test and "economic loss doctrine" would

9

normally bar it from proceeding simultaneously on both theories of liability; <u>Miller v. Greenwich Capital Fin. Prods.</u>, Case No. 05-10203, 2008 Bankr. LEXIS 3068, *12-*14 (Bankr. D. Del. Mar. 20, 2008), allowing conversion and breach of contract claims to proceed because they presented two separate theories of recovery and were not simply duplicative; <u>Intercoastal Realty, Inc. v. Tracy</u>, 706 F. Supp.2d 1325, 1331 (S.D. Fla. 2010), holding that until the existence of a contract between the parties had been established, plaintiff could proceed with simultaneous breach of contract and unjust enrichment claims based on the same events even though Florida law would preclude recovery under the equitable remedy of unjust enrichment when an adequate legal remedy (breach of contract) was available; and <u>Nat'l City Commer. Capital Co., LLC v. Global Golf, Inc.</u>, CA No. 09-307, 2009 U.S. Dist. LEXIS 42780, *1-*4 (E.D. N.Y. May 20, 2009), allowing plaintiff to proceed with claims for estoppel, unjust enrichment, conversion, and breach of contract as alternative theories of recovery arising out of the same events.

OneBeacon's motion to dismiss Count III of the Counterclaims in its entirety is denied without prejudice, but the underlying argument may be raised at a later point if appropriate. See <u>Nat'l City</u>, <u>id.</u> at *5, stating that "following discovery, defendants will be given an opportunity to bring a summary judgment motion on these and any other claims, if they

10

believe the circumstances warrant such a motion."

   B.   Counterclaim Count IV - Breach of
        the Pennsylvania Bad Faith Statute

In Count IV of the Counterclaim, UBICS contends that a number of actions taken by OneBeacon in the process of refusing coverage under the Policy violated the Pennsylvania Bad Faith Statute, 42 Pa. C.S.A. § 8371, ("Section 8371.") In the *ad damnum* clause immediately following Count IV, UBICS seeks

> judgment in its favor and against OneBeacon. . ., dismissing the Complaint with prejudice, finding that OneBeacon acted in bad faith in denying the coverage sought for employee theft, and where reasonable and permissible, award costs of suit, including attorneys' fees, consequential and compensatory damages, net economic loss, and excess verdict, punitive damages, and any other damages available for aggravation and inconvenience.

(Counterclaims at 34.)

OneBeacon seeks to dismiss that portion of the clause which refers to compensatory and other common law contract damages, arguing that they are not available under Section 8371. (Mot. Dis., ¶¶ 12-13.) UBICS responds that by raising this "nominal challenge" to Count IV, OneBeacon is putting "form over substance" and has failed to recognize that the relief sought in this portion of the Counterclaim was carefully crafted to seek those damages that are "reasonable and permissible" under the circumstances. (UBICS Resp. at 12-14.)

Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C. S. A. § 8371.

Thus, the statute itself, as OneBeacon argues, does not provide for the "consequential and compensatory damages, net economic loss, and excess verdict, . . .and any other damages available for aggravation and inconvenience" to which UBICS has referred.

"The Pennsylvania Supreme Court has counseled that while § 8371 does not alter an insured's common law contract rights, an insured may not recover compensatory damages based on § 8371." Std. Steel, LLC v. Nautilus Ins. Co., CA No. 08-195, 2008 U.S. Dist. LEXIS 71487, *14 (W.D. Pa. Sept. 17, 2008), citing Ash v. Continental Ins. Co., 932 A.2d 877, 884 (Pa. 2007). The Court in Ash clarified that Section 8371 did not supplant the existing common law remedy of compensatory damages for breach of contract and that it "does not prohibit the award of compensatory damages where they are otherwise available; it merely provides a basis to award additional damages beyond those already available."

Ash, id., *citing* The Birth Center v. The St. Paul Companies, Inc., 787 A.2d 376, 390 (Pa. 2001).

Here, UBICS has stated a claim for breach of contract by OneBeacon and may be awarded – as supported by the facts, of course -- all damages available under the common law of Pennsylvania for such a breach, i.e., expectation damages, reliance damages, and restitution damages. Fishkin v. Susquehanna Ptnrs, G.P., No. 08-3100, 2009 U.S. App. LEXIS 16626, *11 (3d Cir. July 27, 2009), *citing* Ferrer v. Trustees of Univ. of Pa., 825 A.2d 591, 609 (Pa. 2002). As noted in Birth Center, Section 8371 supplements those remedies where the insured can show the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew of or recklessly disregarded that lack of a reasonable basis. *See* Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005), citing examples of bad faith actions.

UBICS has contributed to the confusion on this point by including an *ad damnum* sentence with each Count in its Counterclaims rather than a single comprehensive prayer for relief. However, it is clear from the pleadings that both parties understand the relevant law regarding recovery when claims for both breach of an insurance contract and violation of Section 8371 are brought a single complaint. In particular, UBICS acknowledges that it has "conspicuously" stated that it is

13

seeking only "those damages that are 'reasonable and permissible' under the circumstances." (UBICS Resp. at 13.) The Court interprets this statement as a concession that compensatory and other contract damages are not available under Section 8371 itself. We therefore find it unnecessary to dismiss or, more accurately, strike, the reference to "consequential and compensatory damages, net economic loss and excess verdict,. . .and any other damages available for aggravation and inconvenience" which appears immediately following Count IV of the Counterclaim. See Mut. Pharm. Co. v. Watson Pharms., Inc., CA No. 09-5421, 2010 U.S. Dist. LEXIS 10542, *20-*21 (D. N.J. Feb. 9, 2010), declining to grant a motion to strike where the plaintiffs explained in response thereto that ambiguous language in their prayer for relief seeking "damages in an amount sufficient to compensate for the damage caused" actually sought restitution, not compensatory damages which were prohibited by the statutes in question. Again, this denial is without prejudice to Plaintiff raising the issue again at an appropriate time in the future.

An appropriate Order follows.

December ___28___, 2010

/s/ William L. Standish
William L. Standish
United States District Judge